In re CONCRETE STRUCTURES,
INC., Debtor.

Concrete Structures, Inc. and Structural Concrete Products, LLC,
Appellants,

v.

Tidewater Crane and Rigging
Co., Appellee.

No. Civ.A. 3:00CV314.

United States District Court,
E.D. Virginia,
Richmond Division.

March 30, 2001.

Daniel M. Press, Chung & Press, P.C., McLean, Virginia, for Structural Concrete Products, LLC.

David K. Spiro, Cantor, Arkema & Edmonds, P.C., Richmond, Virginia, for Concrete Structures, Inc.

James J. Burns, E. Livingston B. Haskell, Williams, Mullen, Clark & Dobbins, P.C., Richmond, Virginia, for appellee.

## MEMORANDUM OPINION

PAYNE, District Judge.

This appeal seeks review of the Bankruptcy Court's decisions: (1) that a mechanics' lien in Virginia is a statutory lien that is not subject to avoidance under 11 U.S.C. § 547(b) ("§ 547(b) of the Bankruptcy Code"); (2) that the filing of an enforcement suit is not necessary to maintain or continue perfection of a mechanics' lien within the meaning of § 546(b)(2)(B) of the Bankruptcy Code; and (3) that Tidewater Crane and Rigging Co. ("Tidewater") timely filed an enforcement suit on its mechanics' lien. For the reasons set forth below, the Bankruptcy Court did not err in those particulars or in granting the Tidewater's Motion to Dismiss and denying the Plaintiffs' Motion to Alter or Amend and/or for Relief from Judgment. Hence, the decision of the Bankruptcy Court is affirmed.

## STATEMENT OF THE CASE

On May 20, 1998, Tidewater, acting pursuant to Va.Code. § 43–4, filed a Memorandum of Mechanics' Lien in Henrico County, Virginia against two parcels of real estate, ("the Property"), owned by Concrete Structures, Inc., ("CSI"). Tidewater claimed $128,992.21 in unpaid labor and materials for the construction of a commercial production building and a warehouse on the Property.

Shortly thereafter, on July 22, 1998, CSI instituted voluntary Chapter 11 bankruptcy proceedings. When CSI instituted the Chapter 11 proceedings, Tidewater had not filed, under Va.Code § 43–22, a Bill of Complaint to enforce its mechanics' lien. However, on September 14, 1998, Tidewater filed a proof of claim which it later amended on February 1, 2000.

CSI tendered a Debtor's Plan of Reorganization, pursuant to which Structural Concrete Products, LLC ("SCP"), would acquire the Property. The reorganization plan, which was confirmed by the Bankruptcy Court on October 27, 1999,[1] provided that holders of any existing mechanics' liens would retain them and that SCP would assume responsibility for the claims of those creditors holding mechanics' liens and would pay them in full; provided, however, that CSI and SCP retained the right to "challenge the validity of the mechanics' liens."

On November 16, 1999, CSI and SCP filed an Adversary Proceeding in the Bankruptcy Court seeking to avoid Tidewater's lien.[2] The Bankruptcy Court granted Tidewater's Motion to Dismiss the Complaint pursuant to Bankr.R. Rule 7012(b) and Fed.R.Civ.P. Rule 12(b)(6) in a Memorandum Opinion entered February 7, 2000. On that date, the Bankruptcy Court also granted Tidewater's Motion for Relief from Stay.[3] CSI and SCP then

1. The Confirmation Order was entered by the Bankruptcy Court on October 27, 1999. On November 5, 1999, the Driggs Corporation (which is not a party to this appeal) filed a Motion to Vacate. That act kept the Confirmation Order from becoming final until the Bankruptcy Court denied the motion to vacate on March 8, 2000, thus finalizing the Confirmation Order.

2. At the same time, CSI and SCP sought to avoid another mechanics' lien held by RIC Industrial Services, Inc. The appeal from the Bankruptcy Court's decision in that Adversary Proceeding (Civil Action No. 3:00cv313) was heard with this appeal because the two cases raise virtually identical issues of law.

3. CSI and SCP explain that they did not oppose the Motion for Relief from Stay because, in their view, the stay was lifted on October

filed a Motion to Alter or Amend and/or Relief from Judgment pursuant to Fed. R.Civ.P. Rule 59(e) and/or Rule 60. The Bankruptcy Court declined to alter its order and entered a Memorandum Opinion on March 27, 2000 denying that motion.

CSI and SCP then appealed both the grant of the Motion to Dismiss and the denial of their motion to amend or alter the judgement, and/or relief from the judgment. This appeal seeks review only of the decision of the Bankruptcy Court dismissing Counts II, II, and IV of the complaint filed by CSI and SCP. Hereinafter, CSI and SCP will be referred to collectively as "CSI."

## DISCUSSION

■ When reviewing decisions of the Bankruptcy Court, "a district court acts as an appellate tribunal, reviewing the findings of fact of the bankruptcy court for clear error and its legal conclusions de novo." *In re Pucci Shoes, Inc.,* 120 F.3d 38, 40 (4th Cir.1997). *See In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992).

### I. A Mechanics' Lien is a Statutory Lien

In Count II, CSI sought to avoid Tidewater's lien as a preference under 11 U.S.C. § 547. Tidewater admitted that, for purposes of the motion to dismiss, Count II sufficiently pleaded the elements necessary to establish a preference claim. However, Tidewater contended, and the Bankruptcy Court held, that the mechanics' lien fell within an exception to the trustee's avoidance powers found in § 547(c)(6), which provides that a trustee may not avoid a transfer "that is the fixing of a statutory lien that is not avoidable under section 545 of this title." 11 U.S.C.

§ 547(c)(6).[4] CSI admits that, if the mechanics' lien here at issue is a statutory lien, the exception of § 547(c)(6) would apply and Count II was properly dismissed.

Thus, the viability of Count II turns on whether a mechanics' lien is statutory lien. That determination involves the interplay between state and federal law because the definitions of statutory and judicial liens under the Bankruptcy Code depends upon the operation and effect of state law.

### A. The Bankruptcy Code

The Bankruptcy Code explains that a statutory lien arises:

*solely by force of a statute on specified circumstances or conditions* ... but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53) (emphasis added). The Bankruptcy Code defines a judicial lien as a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

The legislative history of the Bankruptcy Code shows that Congress considered mechanics' liens to be statutory liens. The House and Senate Reports for the 1978 Bankruptcy Reform Act state:

The definition [of a statutory lien] excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is

---

27, 1999, when the Bankruptcy Court confirmed the reorganization plan.

**4.** Section 545 allows the trustee to avoid the fixing of specified statutory liens upon certain circumstances which are not at issue in this appeal.

only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. *Mechanics', materialmen's, and warehousemen's liens are examples.*

S.Rep. No. 95–989 at 27, 95th Cong., 2d Sess. (1978) (emphasis added); H.R.Rep. No. 595 at 314 95th Cong.1st Sess. (1977) (same), U.S.Code Cong. & Admin.News 1978, at 5787, 5813, 6271. Additionally, a leading bankruptcy treatise explains that "a mechanics' lienor that perfects its lien within the 90–day period preceding the debtor's filing of the petition will not have received a preference because this type of lien is not voidable under section 545." 5 *Collier On Bankruptcy,* ¶ 547.04[6] (15th ed.1996).

██ CSI admits, as it must, that, as a general rule, a mechanics' lien is a statutory lien. It insists, however, that Virginia law is not in accord with the general rule because the filing of a mechanics' lien is a judicial proceeding in Virginia. *See* 11 U.S.C. § 101(36) (a judicial lien is one obtained by "legal or equitable process or proceeding"). That argument, of course, necessitates a foray into Virginia's mechanics' lien statute and decisions interpreting it.

### B. Virginia Law

██ "Whether or not [a] lien is statutory is purely a matter of state law." *In re APC Constr., Inc.* 132 B.R. 690, 693 (D.Vt.1991). *See In re Wisner,* 77 B.R. 395, 397 (Bankr.N.D.N.Y.1987) ("In order to determine whether [a] mechanic's lien is judicial of statutory, it is appropriate to first consider New York state law to see whether the lien is created by operation of statute"). Virginia law clearly concludes that mechanics' lien are statutory in nature.

To begin, it is well to remember that the mechanics' lien claimed by Tidewater was unknown at common law. *Neff v. Garrard,* 216 Va. 496, 219 S.E.2d 878, 879 (1975). The lien, of course, has its foundation in the mechanics' contract and it is the performance of that contract by the mechanic that gives rise to an inchoate lien which is made choate, *i.e.,* created, by statute. *United Masonry, Inc. v. Riggs Nat'l Bank,* 233 Va. 476, 357 S.E.2d 509, 511 (1987) (citing *Sergeant v. Denby,* 87 Va. 206, 12 S.E. 402, 402 (1890); *Hadrup v. Sale,* 201 Va. 421, 111 S.E.2d 405, 407 (1959); *Weaver v. Harland Corp.,* 176 Va. 224, 10 S.E.2d 547, 549 (Va.1940)).

Virginia decisional law has for over a century made clear that "[a] mechanic's lien is purely a creature of statute." *Wallace v. Brumback,* 177 Va. 36, 12 S.E.2d 801, 802 (1941) (holding that the statute requires a memorandum of a mechanic's lien to name the owner of the property at the time the lien is filed, not the owner of the property at the time the materials are furnished). *See First American Bank of Virginia v. J.S.C. Concrete Constr., Inc.,* 259 Va. 60, 523 S.E.2d 496, 497 (2000) ("Although [a mechanics'] lien is a creature of statute, the lien must have its foundation in a contract, with which the lien must correspond."); *Kayhoe Constr. Corp. v. United Virginia Bank,* 220 Va. 285, 257 S.E.2d 837, 840 (1979) ("A mechanic's lien is purely a creature of statute. It has no existence in the common law, and, independently of statute, is unknown in equity."); *Neff,* 219 S.E.2d at 880 (holding that both the right and remedy of a mechanic's lien are creatures of statute); *Feuchtenberger v. Williamson, Carroll & Saunders,* 137 Va. 578, 120 S.E. 257, 259 (1923) ("the lien and the jurisdiction of the court depend upon the statute, and not upon equitable or ethical rules."); *Sergeant,* 12 S.E. at 402 ("although the lien is a creature of the statute, it must have its foundation in a contract").

CSI's effort to escape the effect of these long-standing Virginia decisions is based on the decision in *Donohoe Constr. Co., Inc. v. Mount Vernon Assocs.*, 235 Va. 531, 369 S.E.2d 857 (1988). In *Donohoe*, a contractor filed a memorandum of mechanics' lien and a Bill of Complaint in equity to enforce it. *Id.* at 859. The lien was held to be invalid. *Id.* Then, the owner, Mount Vernon, filed an action alleging claims for slander of title and abuse of process, both grounded in the previously invalidated mechanics' lien. *Id.* at 860.

Donohoe defended the slander of title claim by asserting that the filing of the memorandum of mechanics' lien was privileged for the reason that it was filed in a judicial proceeding. *Id.* In the *Donohoe* opinion, the language of which gives some comfort to CSI, the Supreme Court of Virginia upheld the privilege. In so doing, the Court held that "the filing of the memorandum of mechanic's [sic] lien constitutes a judicial proceeding." *Id.* at 861. This, says CSI, demonstrates that, in Virginia, the mechanics' lien is a judicial lien.

CSI's argument fails, notwithstanding the sentence on which it relies, because, in the very next sentence, the Court went on to explain:

> As previously noted, it [the filing of the memorandum of mechanics' lien] is a prerequisite to a suit to enforce. For a claimant to obtain a remedy provided by statute, he must perfect his lien and, thereafter, sue to enforce it. *The two proceedings are inseparable.*

*Id.* (emphasis added).

That explication was clarified recently in *Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.*, 259 Va. 92, 524 S.E.2d 420 (2000). In *Lockheed*, the defendant to a tortious interference with contract action argued that the absolute privilege for judicial proceedings extended to statements made in an affidavit submitted during an

administrative hearing because the execution of an affidavit was a "judicial act." *Id.* at 425. The Court rejected this argument for several reasons, one of which was the defendant's misapprehension of the meaning of the sentence in *Donohoe* on which CSI relies here. The Court explained that, in *Donohoe*, the privilege attached to the mechanics' lien affidavit only because the "affidavit to perfect the lien is a prerequisite to filing suit to enforce the lien ..." *id.*, and in the Court's view, "the filing of the lien and the suit to enforce the lien were *inseparable*" and "constituted a *single judicial proceeding.*" *Id.* (emphasis added). Thus, *Lockheed* explains that *both* the filing of the memorandum *and* the suit to enforce the lien constitute a judicial act or judicial proceeding, not that the mere filing of the memorandum is a judicial proceeding. That interpretation of *Donohoe* is fully consistent with earlier decisions of the Supreme Court of Virginia to the effect that the filing of a memorandum is not a proceeding at all. *See Walt Robbins, Inc. v. Damon Corp.*, 232 Va. 43, 348 S.E.2d 223, 227 (1986) ("The filing of the memorandum is not a proceeding at which parties with adverse interests may challenge the validity of the lien. Indeed, it is not a 'proceeding' at all. A suit to enforce that lien is, however, such a proceeding ..."). When *Donohoe* and *Lockheed* are viewed in perspective of Virginia's well-settled view of mechanics' liens, it would be unwise to accept CSI's overture to set at naught the established principle that, in Virginia, mechanics' liens are statutory liens.

 Moreover, CSI's argument ignores the differences in the definitions in the Bankruptcy Code. To be a judicial lien under § 101(36), the lien must be *obtained* by a judgment or some other equitable process or proceeding. Even if the sole act of filing a memorandum of me-

chanic's lien were a judicial proceeding (which it is not), that act is merely the *perfection* of the lien; it is not the creation of the lien. The lien, created by § 43–3: has its foundation in the contract providing for the materials and the work; exists in an inchoate state as of the performance of the work; and remains inchoate until fixed by perfection:

> It should be observed that Code § 43–4 provides that the general contractor, to perfect his lien, shall file his memorandum at any time after the work is done and material furnished by him and before the expiration of sixty days from the time such building is completed, or the work thereon otherwise terminated. This language, when fairly construed, means that *an inchoate lien attaches when the work is done and materials furnishes which may be perfected within the specified time.*

*Hadrup v. Sale*, 201 Va. 421, 111 S.E.2d 405, 407 (1959) (internal citations omitted) (emphasis added). *See United Masonry, Inc. v. Riggs Nat'l Bank*, 233 Va. 476, 357 S.E.2d 509, 512 (1987) ("it is the contractor's performance under the contract that gives rise to the inchoate lien"). Under the Bankruptcy Code, "a judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding." 2 *Collier on Bankruptcy* ¶ 101.53. In Virginia, the mechanics' lien does not "arise[ ] only by virtue of judicial proceedings in the absence of which there would be no such lien."

Likewise, the statute provides that "[a]ll persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure ... *shall have a lien*, if perfected as hereinafter provided...." Va.Code.

§ 43–3 (emphasis added). Relevant decisional law and the plain words of the statute make clear that the lien arises "solely by force of statute on specified circumstances or conditions." 11 U.S.C. § 101(53). These specified circumstances are set forth in Va.Code § 43–3. Then, section 43–4 provides the specifics of perfection, such as filing a memorandum of lien within 90 days of the completion of work, where to file such memorandum and what it should contain. These instructions are precisely those contemplated by § 101(53) which indicates that a statutory lien arises by statute (here, the Virginia mechanic's lien statute) on specified circumstances and conditions (those set forth in § 43–4). *See* 2 *Collier on Bankruptcy* ¶ 101.53 ("While the filing of the lien may determine whether it is perfected to the extent that it may not be avoided under section 545, it does not transmute a statutory lien into a different kind of lien").

## C. Relevant Federal Case Law

The decision reached here is harmonious with the conclusions of other federal courts considering analogous state law provisions. In the thoughtful decision of *In re APC Constr. Inc.*, 132 B.R. 690 (D.Vt.1991), the district court construed Vermont's mechanics' lien statute, which is analogous in many respects to Virginia's statute, to be a statutory lien. The court observed that the Vermont statute and decisional law provided that "when a contract is made for improving real property or for furnishing labor or material for improvements, the contractor shall have a lien on the improvements and the land to secure the payment for the improvements or materials." *Id.* at 693. That, of course, is the case under Virginia's statute. *See* Va. Code § 43–3 ("All persons performing labor or furnishing materials ... for the construction, removal, repair or improvement of any building or structure ... shall

have a lien, if perfected as hereinafter provided ..."); *United Masonry*, 357 S.E.2d at 512 ("A mechanic's lien, although a statutory creation, has its foundation in a contract and it is a contractor's performance under the contract that gives rise to the inchoate lien."); *Hadrup*, 111 S.E.2d at 407 ("an inchoate lien attaches when the work is done and materials furnished which may be perfected within the specified time").

The court then observed that under Vermont law, "the property is charged with a contractor's lien when the claimant files notice of lien by written memorandum with the town clerk." *APC Constr.*, 132 B.R. at 693. The same is true of Virginia law. *See* Va.Code § 43–4 ("A general contractor, or any other lien claimant ... in order to perfect the lien given by § 43–3 ... shall file a memorandum of lien ... in the clerk's office in the county or city in which the building [or] structure ... is located").

Lastly, again similar to Virginia law, the Vermont statute requires the lienor to seek a writ of attachment within a specified time of the filing of the memorandum. *APC Constr.*, 132 B.R. at 693–94. Virginia law, too, provides for a separate suit to enforce the lien. *See* Va.Code § 43–17 ("No suit to enforce any lien perfected under §§ 43–4, 43–5, and 43–7 to 43–10 shall be brought after six months from the time when the memorandum of lien was recorded ...").

■■ Thus, like Virginia law, Vermont law provides that a:

mechanic's lien exists the moment the work on the property begins. Whereas 'a mechanic's lien takes effect when the requisite memorandum is filed in the proper office,' and the owner and the world have notice that the property stands charged with the payment of bills of the creditor. Up to this point, the contractor lienor does not need to resort

to any judicial process to obtain his lien on the property.

*APC Constr.*, 132 B.R. at 694 (quoting *T. A. Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 287 A.2d 560, 564 (1972)). Hence, the court found it insignificant that the lienor must resort to the courts in order to enforce the lien:

the Bankruptcy Code categorizes a lien by the way it is established, not by how it is preserved. A statutory lien is a lien "arising" because of "specified circumstances or conditions" laid out in the statute. Characterizing a contractor's lien as "inchoate" before a writ of attachment is obtained does not change the fact that it exists.

*Id.*

■ As the Second Circuit, in *In re The Lionel Corp.*, 29 F.3d 88 (2d Cir.1994), has quite clearly explained:

[t]he Code thus contemplates that liens created consensually (such as mortgage liens or UCC security interests) or by judicial action (such as judgment liens, attachments, equitable liens or levies) are not "statutory liens," while liens that come into being as a result of statutory operation, without consent or judicial action, are "statutory liens." Given this scheme, we believe that mechanic's liens qualify as statutory liens. The legislative history to § 101(53) confirms this conclusion.

*Id.* at 94 (citing H.R.Rep. No. 95–595 at 314, 95th Cong.1st Sess. (1978); S.Rep. No. 95–989 at 27, 95th Cong.2d Sess. (1978)).

For the foregoing reasons, the law of Virginia and the Bankruptcy Code, given their plain meaning and considered together, make clear that a mechanics' lien is properly considered to be a statutory lien so that it falls within the exception provid-

ed in 11 U.S.C. § 546(c)(6).[5] Therefore, the Bankruptcy Court was correct in dismissing Count II of the Complaint and in declining to amend its decision.

## II. Perfection of a Mechanics' Lien Under Virginia Law

In Count III of the Complaint, CSI sought to avoid Tidewater's lien pursuant to 11 U.S.C. § 544(a)[6] on the ground that Tidewater failed to maintain or continue the perfection of its lien by instituting an action to enforce the lien under Va.Code § 43–22 or giving notice under 11 U.S.C. § 546(b). At its core, CSI's theory hinges upon whether the institution of a suit to enforce the mechanics' lien under § 43–22 is part of the perfection process or whether the institution of an enforcement suit is separate and distinct from perfection of the lien. If the commencement of an enforcement suit is required to maintain perfection under Virginia law and, if such a suit had not been instituted before CSI instituted the Chapter 11 proceedings, then under § 546(b)(2) of the Bankruptcy Code, in order to maintain perfection, Tidewater was required to give notice to CSI within the period of time provided under the state statute. Alternatively, if the commencement of an enforcement suit is not part of the perfection process, the filing of a bankruptcy petition operates as a stay to any enforcement action and Tidewater's mechanics' liens would remain in effect.[7] It is undisputed that Tidewater

---

**5.** *Accord In re Souers,* 163 B.R. 346, 349 (Bankr.S.D.Iowa 1994) (relying on the legislative history of the Bankruptcy Code to conclude that "a mechanics' lien is a statutory lien within the meaning of 11 U.S.C. § 101(53)). Further, the attachment or perfection of a statutory lien during the preference period is not generally avoidable as it falls within the scope of § 547(c)(6)."; *In re Wisner,* 77 B.R. 395, 397 (Bankr.N.D.N.Y. 1987) (collecting cases and holding that New York mechanics' liens were creatures of statute and were therefore statutory liens); *In re Seel,* 22 B.R. 692, 695 (Bankr.D.Kan.1982) (holding that the Kansas statute for mechanics' lien "was virtually the same as the definition provided by the Code" for statutory liens, and was therefore not a security interest); *In re Ribeiro,* 7 B.R. 359, 361 (Bankr.D.Mass. 1980) (holding that under Massachusetts law a mechanics' lien is wholly a creature of statute and arises out of the circumstances under which the work is done and the materials are furnished).

**6.** Section 544(a) of Title 11 United States Code provides:
The trustee shall have, as of the commencement of The case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**7.** Although the Bankruptcy Court did not explicitly hold that filing a suit in equity constituted enforcement of a lien, its conclusion that an enforcement suit was subject to the automatic stay provision of 11 U.S.C. § 362(a)(4) necessarily was based on the premise that an enforcement suit fell outside the provisions of 11 U.S.C. § 546(b)(2)(B).

did not institute a suit to enforce the lien under Va.Code § 43–22 until after CSI filed its Chapter 11 proceedings and it did not give notice to CSI within six months of filing the memorandum of a mechanics' lien.

### A. The Bankruptcy Code

#### 1. The Automatic Stay of 11 U.S.C. § 362

■ Tidewater filed its memorandum of mechanics' lien on May 20, 1998. CSI filed its bankruptcy petition on July 22, 1998. On the date of CSI's petition, the automatic stay provisions of 11 U.S.C. § 362(a)(4) operated to bar the filing of an enforcement suit because the filing of a bankruptcy petition stays "any act to create, perfect, or *enforce any lien* against property of the estate." 11 U.S.C. § 362(a)(4) (emphasis added). Courts construing Virginia law agree that § 362 applies to actions to enforce properly filed mechanics' liens. *See In re Bain,* 64 B.R. 581, 583 (W.D.Va.1986) ("Specifically, Section 362(a)(4) prohibits the filing of suit to enforce any lien against property of the debtor's estate."); *TQY Inv. v. Rodgers Co., Inc.,* 26 Va.Cir. 40, 43 (Fairfax County 1991) (a contractor may not file a Bill of Complaint to enforce a mechanics' lien against the owner after the owner has filed for bankruptcy without violating § 362).

#### 2. The 1994 Amendment to Section 546

CSI argues that the commencement of an enforcement suit does not fall within the automatic stay provisions of § 362(a) because § 362(b)(3) excepts from application of the stay "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ..." 11 U.S.C. § 362(b)(3). Section 546(b), in turn, provides that:

(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—

(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or

(B) provides for the *maintenance or continuation of perfection* of an interest in property to be effective against an entity that acquires rights in such property before the date on which the action is taken to effect to maintenance or continuation.

(2) If—

(A) a law describe in paragraph (1) requires ... *commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property;* and

(B) ... such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest *shall be maintained or continued, by giving notice* within the time fixed by such law for ... such commencement.

11 U.S.C. § 546(b) (emphasis added). The 1994 amendment expanded the scope of § 546(b) (which previously related only to perfection of an interest) to encompass an act to maintain or continue perfection of a security interest.[8]

---

8. Before the 1994 amendment, § 546 read:
The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that

permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law re-

Relying upon the 1994 amendment, CSI argues that a suit to enforce a mechanics' lien in Virginia is actually part of the perfection process and that Tidewater was required to give notice within the time fixed by Virginia law for the filing of the enforcement suit. *See* Va.Code § 43–17. It is undisputed that no notice was given within this time. Therefore, according to CSI, the lien is subject to avoidance.

The analysis of the novel and far-reaching interpretation of § 546(b) here urged by CSI, of course, begins with the statute. The text of § 546(b) neither calls for, nor forecloses, the statutory construction now advanced by CSI.

The only comment in the legislative history of the 1994 amendment to § 546(b) actually counsels against adopting the interpretation pressed by CSI. The Section–By–Section Description of the statutory charges submitted during the consideration of Bankruptcy Reform Act of 1994 in the House of Representatives explains that the change to § 546(b) was intended to apply to acts necessary to maintain or continue the perfection of in interest held by a secured creditor under the Uniform Commercial Code ("UCC"):

> This section sets forth an amendment to sections 362 and 546 of the Bankruptcy Code to confirm that certain actions taken during bankruptcy proceedings *pursuant to the Uniform Commercial Code to maintain a secured creditor's position as it was at the commencement of the case* do not violate the automatic stay. Such actions could *include the filing of a continuation statement and the filing of a financing statement.* The

steps taken by a secured creditor to ensure continued perfection merely *maintain the status quo* and do not improve the position of the secured creditor.

140 Cong.Rec. H10767 (daily ed. Oct. 4, 1994) (emphasis added). *See also* H.R.Rep. No. 103–835 at 45, 103rd Cong.2nd Sess (1994) (same), U.S.Code Cong. & Admin.News 1994, at 3340, 3354. Thus, it would appear that Congress never contemplated that the 1994 amendment would apply to mechanics' liens, but, instead, requires only that the creditor must give notice instead of taking actions to continue or to maintain an interest under the UCC. The 1994 amendment, viewed in context of its legislative history, thus does not have the novel, far-reaching effect on the enforcement of mechanics' liens that is CSI's theory here.

On the other hand, the text of the statute is not as complete as is the explanation found in the legislative history. And, it cannot be said that the statutory text, uninformed by the legislative history, clearly forecloses CSI's interpretation. However, CSI's argument fails for the additional reason that Virginia does not treat enforcement actions as part of the perfection process.

### B. Virginia Law

 CSI's argument depends upon whether the institution of an enforcement suit is necessary to maintain perfection of the lien. The argument, though novel and creative, misconstrues or ignores relevant decisional law which establishes that perfection of mechanics' liens is completed upon filing the memorandum required by

---

quires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the

petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

11 U.S.C.A. § 546(b) (1993).

§ 43–4 and does not involve the separate, second step of filing an enforcement suit under § 43–22.

CSI urges that the inquiry must be approached through "the federal lens of the bankruptcy code." However, the Bankruptcy Code merely returns the focus to state law because the Virginia mechanics' lien statute is the "generally applicable law" referenced in § 546(1). *See In re Eaton,* 220 B.R. 629, 631 (Bkrtcy.E.D.Ark. 1998) (looking to the state statute providing for lien perfection as the generally applicable law referred to in § 546(b)); 5 *Collier on Bankruptcy* ¶ 546.03[2][c] ("While applicable law is usually state law, federal law may also apply," citing to the Ship Mortgage Act of 1920).

The law of mechanics' liens in Virginia is governed by Va.Code § 43–1 *et seq.* The statutory scheme, and the decisional law interpreting it, clearly bespeak that creation, perfection and enforcement are distinctly different events.

As explained previously, the mechanics' lien arises from the contract and exists, as an inchoate right, upon performance of the work. The lien is created, however, by statute; and it is fixed upon perfection. In Virginia, the statute of creation is § 43–3. Then, in § 43–4, the statutory scheme next addresses perfection of the lien created by § 43–3. Section 43–4 is entitled "Perfection of lien by general contractor; recordation and notice;" and, in substance, it provides:

A general contractor, or any other lien claimant ..., *in order to perfect the lien given by § 43–3, ... shall file a memorandum of lien* at any time after the work is commenced or material furnished.... The memorandum shall be filed in the clerk's office in the county or city in which the building [or] structure ... is located.

Va.Code § 43–4 (emphasis added). The particular requirements for perfection are outlined in §§ 43–4.01 through 43.14.1.

Enforcement of the lien is addressed separately in § 43–22 which requires that enforcement of liens "created and perfected" in accord with the statutory scheme must occur in the equity side of Virginia's court system. Thus, § 43–22 provides:

**How Liens Enforced.** *The liens created and perfected under this chapter may be enforced in a court of equity* by a bill filed in the county or city wherein the building [or] structure ... is situated, or wherein the owner ... resides.

Va.Code § 43–22 (emphasis added).

The statute then fixes a time limit for filing the enforcement suit:

**§ 43–17. Limitation on suit to enforce lien.**—*No suit to enforce any lien perfected* under § 43–4 ... shall be brought *after six months from the time when the memorandum of lien was recorded or after* sixty days from the time the building [or] structure ... was completed or the work thereon otherwise terminated, whichever time shall last occur; provided, however, that the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the institution of a suit under this section; and, *provided further, that nothing herein shall extend the time within which such lien may be perfected.*

Va.Code § 43–17 (emphasis added).

Thus, the statute demonstrates that a mechanics' lien is perfected by filing a memorandum in the clerk's office of the appropriate county or city. Once a memorandum is properly filed in proper form (as was Tidewater's memorandum) perfection is complete.

The plain language of the statute makes clear that enforcement is not a constituent

element of perfection. That is further demonstrated by the fact that the statute providing for the mechanisms of enforcement refers to the enforcement of "perfected liens," thereby further drawing a distinction between perfection and enforcement. Indeed, enforcement pursuant to §§ 43–17 and 43–22 can be instituted only on a previously perfected lien. And, § 43–17 underscores the difference by explicitly stating that nothing in the enforcement section "shall extend the time within which such lien may be perfected." The reference to perfection within the enforcement provision thus demonstrates the clear-cut difference between perfection and enforcement.[9]

■ Outside the context of bankruptcy proceedings, Virginia decisional law also draws a distinction between perfection and enforcement of a mechanics' lien. For example, in *American Standard Homes Corp. v. Reinecke*, 245 Va. 113, 425 S.E.2d 515, 518 (1993), the Supreme Court of Virginia explained that a mechanic's lien "is one in derogation of the common law. Once *perfected* in accordance with § 43–4, *the lien can be enforced* by suit brought as provided in §§ 43–17 and –22" *Id.* (emphasis added). The provisions are further distinguished by the standard applied for compliance: enforcement provisions are construed liberally, while the perfection requirements are strictly construed. *Id. See also Carolina Builders Corp. v. Cenit Equity Co.*, 257 Va. 405, 512 S.E.2d 550, 552 (1999) (same).

In like fashion, decisions construing Virginia's mechanics' lien statute in the context of bankruptcy proceedings certainly have recognized a clear distinction between enforcement and perfection. In-

deed, the precise issue was presented in *In re Bain*, 64 B.R. 581 (W.D.Va.1986) wherein the lienor filed a bill of complaint to enforce a mechanics' lien without first obtaining relief from the automatic stay that took effect on initiation of the debtor's bankruptcy proceedings. *See id.* at 582. The district court agreed with the bankruptcy court in finding that the act of filing the enforcement suit violated the stay provisions of 11 U.S.C. § 362. *Id.* at 583. As to the lienor's argument that perfection is actually a two-step process in Virginia (the very same argument presented by CSI here), the court found that the assertion "demonstrates a fundamental misunderstanding of perfection of a mechanics' lien in Virginia, and the interaction of the bankruptcy laws with the mechanics' lien provisions." *Id.* Instead, "[p]erfection of a mechanics' lien is a one-step process in Virginia," requiring only the filing a memorandum in accordance with Va.Code § 43–4. *Id.* Relying on the plain language of the statute, the court concluded that § 43–17, which CSI asserts to be the second-step of perfection, only sets forth a limitations period in which the lienor must file suit to collect on his previously perfected lien. *Id.*

More recently, *In re Richardson Builders, Inc.*, 123 B.R. 736 (Bankr.W.D.Va. 1990), relied upon *In re Bain* to reach the same result: "the recording of a memorandum of lien is all that is necessary to perfect a mechanic's lien. . . . Thus in Virginia, the recording of a memorandum of lien does not violate the stay imposed by section 362(a), while the filing or prosecution of an enforcement action under Va. Code § 43–22 does do so." *See also* Doug Rendleman, *Enforcement of Judgments*

---

9. Moreover, even the titles of the distinct sections of the separate the required acts into "perfection" and "enforcement". *See* Va. Code §§ 43–4 (*"Perfection* of a lien by a gen-

eral contractor, recordation and notice"); 43–17 ("Limitation on suit to *enforce* lien"); and 43–22 ("How liens *enforced* ") (emphasis added).

*and Liens in Virginia* § 6.11, pg. 351 (1994, Supp.2001) ("The automatic stay does not stay the perfection of a mechanic's lien by filing an appropriate memorandum of mechanic's lien. When a debtor files a petition of bankruptcy, any creditor's action to collect on the contract from bankrupt owner, as well as an action to foreclose a mechanic's lien, is enjoined").

■ Additionally, the general operational effect of the "new" exemption provisions for perfection of mechanics' liens contained in the 1994 amendment to § 546(b) has already been considered by the court in *In re Richardson Builders.* Mechanics' lienholders have always been exempt from the automatic stay provision of § 362 if some action is required to perfect their interest in the property. *See* 11 U.S.C. § 362(b)(3) (the filing of a bankruptcy petition "does not operate as a stay . . . of any act to perfect an interest in property. . . ."). This exemption was integral to the court's holding in *In re Richardson Builders,* where the court noted that actions to *perfect* an interest in property are excepted by § 362(b)(3), while actions to *enforce* the lien are not. 123 B.R. at 738.

Thus, the plain language of the statute, coupled with relevant decisional law, necessitates the conclusion that a suit to enforce a mechanics' lien is separate from, and not a necessary part of, the perfection of that lien.

### C. Virginia's Statute Compared to Those of Other States

Recognizing the formidable obstacles to the argument presented by the clear statutory language and by the decisions in *In re Bain,* 64 B.R. 581, and *In re Richardson Builders, Inc.,* 123 B.R. 736, CSI contends that these decisions should not control the outcome of the present inquiry because (1) they were wrongly decided and (2) those

decisions do not consider the effect of the 1994 amendment.

Instead, CSI focuses upon the decision in *In re Baldwin Builders,* 232 B.R. 406 (9th Cir. BAP 1999), wherein the Ninth Circuit applied the "maintenance and continuation" provisions of § 546(b) to lien enforcement actions. The court explained that

[u]nder California law, the filing of a foreclosure suit, an enforcement action, is required to maintain the perfection of a lien: if not suit is timely filed, then the lien becomes void. Section 546(b) unambiguously mandates that, if commencement of an action is required to maintain or continue perfection, notice shall be given instead.

*Id.* at 411.

As an initial matter, the *Baldwin* court did not confront the precise issue presented here. Instead, the court was asked to determine whether the filing of a foreclosure action brought on a mechanic's lien violated the automatic stay provisions of 11 U.S.C. § 362(a). Secondly, the fundamental difference between the present case and *In re Baldwin,* is that entirely *different* state statutes are at issue. Specifically, the Ninth Circuit's holding is tethered to the conclusion that "[u]nder California law, the filing of a foreclosure suit, an enforcement action, is required to maintain perfection of a lien." *Id.* at 411. *See also id.* ("we agree that the filing of a foreclosure suit is necessary under California law to maintain the lien"). The California statute at issue in that case is not analogous to that of Virginia and does not draw the bold distinctions between perfection and enforcement drawn by the Virginia mechanics' lien statute. *See e.g.* Cal. Civil Code § 3115 (calling the filing of a memorandum, which Virginia considers to be perfection, part of enforcement: "Each origi-

nal contract, in order to enforce a lien, must record his claim of lien ...").

The other decisions upon which CSI relies are unpersuasive for the same reason. *See In re Rincon Island Ltd. P'ship*, 253 B.R. 880, 883 (Bankr.C.D.Cal.2000) ("First, California law requires two distinct steps for the perfection of a ... lien: recordation of the lien ... and enforcement or perfection of the lien ..."); *In re Coated Sales*, 147 B.R. 842, 844 (S.D.N.Y.1992) (holding that the Rhode Island statute "makes clear ... that perfection is contingent on compliance with other provisions of the statutory scheme."); *In re Birdview Satellite*, 90 B.R. 465, 470 (Bankr.D.Kan. 1988) ("The Court therefore holds that the bringing of an action to foreclose a mechanic's lien within one year of the filing of the lien statement is a necessary step for perfection under Kansas law."). In fact, *In re Birdview* explains that decision from other jurisdictions is of little use to the inquiry: "citations from other jurisdictions are of questionable value in mechanic's lien cases because of the varying state statutes" therefore "this court disregards as noncontrolling cases from other jurisdictions cited by the parties." *Id.*

As explained above, the Virginia statutory scheme is explicit in laying out the steps for enforcement and perfection and is very careful to maintain the distinctions between the two. Decisions from other jurisdictions construing different state statutes cannot override the clear language of the statute, or the constructions given to that statute by Virginia state and federal courts. And, contrary to CSI's arguments, the 1994 amendment does not change this well-established difference. *See* 5 *Collier on Bankruptcy* ¶ 546.03[2][c][iii] ("Section 546(b)(1) does not impose new or additional perfection requirements beyond those set forth by the applicable law").

## D. The Extension of Time Under 11 U.S.C. § 108(c)

 Because § 362(a) operated to stay any act of enforcement after CSI filed its bankruptcy petition on July 22, 1998, 11 U.S.C. § 108(c) provides an extension of time for commencing or continuing any civil action necessary to enforce the lien. Section 108(c) provides:

if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c). Thus, Tidewater had until the later of (1) the time provided by the mechanics' lien statute, Va.Code § 43–17, including any time suspended, or (2) 30 days after notice of the termination or expiration of the automatic stay to file its enforcement action. Virginia Code § 8.01–229(D) further provides that, if the filing of a bankruptcy petition obstructs the filing of an action, the time consumed by the obstruction is not counted in the period in which the action should be brought. *See* Va.Code § 8.01–229(D) ("When the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy or filing a petition for an extension or arrangement under the United States Bankruptcy Act ..., then the time that such obstruction has continued shall

not be counted as any part of the period within which the action must be brought").

CSI seeks to avoid the operation of these precepts on two grounds. First, CSI contends that a mechanics' lien is a liability in rem, therefore the tolling provisions of 11 U.S.C. § 108(c) do not apply. Secondly, CSI asserts that the stay was actually lifted at the time the confirmation order was entered, thus any enforcement suit filed by Tidewater in June 2000 was untimely, even if § 108 is applicable. Neither theory carries the day for CSI.

**1. Section 108(c) Tolls the Time for Filing an Enforcement Action on a Mechanic's Lien**

To escape the effect of the tolling provisions of § 108(c), CSI contends that a suit to enforce a mechanic's lien is an action in rem and therefore falls outside the purview of § 108(c), which provides an extension of time to file suit only against the *debtor*. *See* 11 U.S.C. § 108(c) (tolling the time for "a claim against the debtor"). For this proposition, CSI relies upon *Washington Fed. Savings Bank v. William H. Metcalfe & Sons*, 33 Va.Cir. 161, 162 (Fairfax County 1994), which holds that a suit to enforce a mechanic's lien is an action in rem and *Kayhoe Constr. Corp. v. United Virginia Bank*, 220 Va. 285, 257 S.E.2d 837, 840 (1979), which holds that a mechanic's lien is a liability in rem. *Kayhoe*, however, did not involve a bankruptcy proceeding and the court's determination that a lien was a liability in rem was stated in dicta only. *Id.* Secondly, in *Washington Federal*, the court held only that a suit to enforce a mechanics' lien was an action in rem so that the debtor was no longer a necessary party once the property passed from the estate pursuant to a foreclosure sale. *Washington Federal*, 33 Va. Cir. at 163. *Washington Federal* did not address § 108(c) or its effect on a suit to enforce a lien.

Other Virginia decisions, however, construe § 108(c) to operate as a stay to the enforcement of mechanics' liens under Virginia law, without mention of whether such suits are in rem. *See McCoy v. Chrysler Condo Developers, L.P.*, 239 Va. 321, 389 S.E.2d 905 (1990) (holding that § 108(c) required the lienholder to bring an enforcement suit within 30 days of the termination or expiration of the stay); *TQY Inv. v. Rodgers Co., Inc.*, 26 Va.Cir. 40, 43 (Fairfax County 1991) (Section 108(c) tolls the applicable statute of limitations to protect a properly perfected mechanic's lien creditor).

Though the most recent pronouncement by the Supreme Court of Virginia clearly indicates that mechanics' liens are subject to the tolling provisions of § 108(c), *see McCoy*, 389 S.E.2d at 907 ("Section 108(c)(2) makes clear that McCoy could institute an enforcement suit [on the mechanic's lien] at any time within '30 days after notice of termination or expiration of the stay,'") even if § 108(c) did not apply to mechanic's liens, § 8.01–229(D) of the Virginia Code tolled the time for Tidewater to file its enforcement suit because the filing of the bankruptcy petition was an obstruction to filing an action, therefore "the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." Va.Code § 8.01–229(D). *See Applied Concepts Contractors, Inc. v. HCP 505 Ltd., Inc.* 1992 WL 884511, *2 (Va.Cir.Ct.Fairfax County 1992) ("The Court is convinced that Bankruptcy Code 108(c) and Virginia Code 8.01–229(D) together tolled the six-month time period during which Applied Concepts was required to file its enforcement suit under Virginia Code 43–17.")

CSI's only response to this argument is that the automatic stay of 11 U.S.C.

§ 362(a) did not enjoin the filing of suit because 11 U.S.C. § 546(b)(2)(B) required Tidewater to give notice, which is the functional equivalent of filing suit. As discussed above, § 546(b)(2)(B) has no bearing upon the institution of an enforcement action on a mechanic's lien, therefore Va. Code § 8.01–229(D) would apply. Consequently, the time consumed while the automatic stay of 11 U.S.C. § 362(a) was operative does not count toward the time limits set forth in Va.Code § 43–17.[10]

### 2. The Lifting of the Automatic Stay

Having concluded that 11 U.S.C. § 108(c) and Va.Code § 8.01–229(D) together toll the time for filing an enforcement action during the pendency of the automatic stay, it is now necessary to resolve the dispute respecting when that stay was lifted. CSI argues that the stay was lifted on October 27, 1999, the date of the Bankruptcy Court's Confirmation Order. Tidewater responds, and the Bankruptcy Court agreed, that the stay could not have been lifted on that date because the Motion to Vacate filed by the Driggs Corporation prevented the Confirmation Order from becoming final.[11]

CSI concedes that the Confirmation Order did not become final until March 8, 2000 when the Bankruptcy Court denied the motion by Driggs Corporation. Yet, CSI still insists that, under 11 U.S.C. § 1141(b), "the confirmation of the plan vests all of the property of the estate in the debtor" and therefore, in their view, the automatic stay was lifted on the confirmation date according to § 362(c)(1), regardless of the effective date of the Confirmation Order. Section 362(c)(1) states that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Presumably, CSI is suggesting that, because the Property was supposedly revested in the debtor upon confirmation of the plan, the Property is no longer property of the estate under § 362(c)(1).

■■■■ Assuming, without deciding, that the confirmation of the plan took place on October 27, 1999 (as opposed to March 8, 2001) as CSI suggests, the legislative history of § 362 and the relevant case law requires rejection of CSI's proposed construction. Both the Senate and House of Representatives reports to the 1978 legislation make clear that subsection (c)(1) was not meant to apply to the removal of the property from the estate due to the revesting of property in the debtor pursuant to confirmation of the plan. The Senate report explains that paragraph (1):

---

**10.** In its brief, CSI incorrectly states that Tidewater relies upon Va.Code § 8.01–229(C) as the pertinent state tolling provision. This section provides "[w]hen the commencement of any action is stayed by injunction, the time of the continuance of the injunction shall not be computed as any part of the period within which the action must be brought." Va.Code § 8.01–229(C). Tidewater relies upon the more relevant tolling provision of § 8.01–229(D), which applies to obstructions to filings due to bankruptcy proceedings. *Cf. Penn–Mar, Inc. v. Fredericksburg Inn Ltd. Partnership,* 1990 WL 751254, *2 (Va.Cir.Ct.Spotsylvania County 1990) ("an automatic stay under the federal bankruptcy law is not an injunction within the meaning of 8.01–229(c).

To hold that it is would render 8.01–229(D) ... meaningless or, at best, confusing and ambiguous."), *other parts of opinion withdrawn* 1990 WL 751301 (Va. Cir. Ct.1990).

**11.** "But for the Driggs Corporation's motion, the property would have been transferred from Concrete Structures to Structural Concrete Products and the requisite nexus between debtor, the property and the lien that is the basis for federal jurisdiction would have evaporated." *Memorandum Opinion,* February 7, 2000, pg. 2 fn. 1. The Bankruptcy Court's conclusion apparently was an application of 11 U.S.C. § 362(c)(1).

Subsection (c) of Section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption. *It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.* Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied....

S.Rep. No. 95–989 at 52, 95th Cong., 2d Sess. (1978) (emphasis added). The House report confirms this understanding. *See* H.R.Rep. No. 95–595 at 343, 95th Cong., 1st Sess. (1977) (same), U.S.Code Cong. & Admin.News 1978, at 5787, 5838, 6299. Thus, the legislative history makes patently clear that the automatic stay is not lifted under § 362(c)(1) merely because the property is returned to the debtor's estate. Instead, for such property, the stay is lifted upon the happening of the specified acts in subsection (2) or some other provision of § 362(c).

This conclusion accords with the decisions of other courts, which hold that the termination of the automatic stay should not take effect due to the revesting of the property in the debtor because other provisions of § 362 protect the debtor's property. *See In re Phillos,* 14 B.R. 781 (Bankr.W.D.Va.1981) ("The termination of automatic stay provided for in § 362(c)(1) does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor") (citing legislative history). "The author of the legislative history appears to be alluding to the protection afforded the debtor by § 362(a)(5)." *In re Harrell,* 57 B.R. 88, 89 (Bankr.D.S.C.1985). "Congress made it clear that a termination under Section 362(c)(1) 'does not terminate the stay against the property of the debtor if the property leaves the estate and goes to the debtor.' ... This is because property in the hands of the debtor is independently protected by the provisions of Section 362(a)(5)." *In re Cornist,* 7 B.R. 118, 120 (Bankr.S.D.Cal.1980) (quoting H.R.Rep. No. 95–595). *See also In re Binder,* 224 B.R. 483, 490 (Bankr.D.Colo.1998) ("Thus confirmation of a plan which revests estate property in the debtor terminates the stay as to property of the estate, but the stay nevertheless continues to protect the debtor and the debtor's property until the case is closed, dismissed, or a discharge order is entered,"); *In re Berry,* 11 B.R. 886 (Bankr.W.D.Pa.1981) (Reciting the legislative history and concluding that "[t]ermination of the protection given in Section 362(a)(5) to the property of the debtor would occur when the events in Section 362(c)(2) happen rather than the abandonment contemplated in (c)(1)").

Therefore, "[t]he property, upon confirmation of the plan, became property of the debtor which continues to be protected by the automatic stay provided in § 362(a)(5) until such time as it is terminated ..." *In re Harrell,* 57 B.R. at 89.

### 3. Deadline for Filing an Enforcement Action

 Tidewater filed is memorandum of lien on May 20, 1998. When CSI filed its bankruptcy petition on July 22, 1998, two months and two days had elapsed on the six months in which Tidewater was required to file a bill of complaint under Va.Code § 43–17. On motion by Tidewater, the Bankruptcy Court granted Tidewater a relief from stay on February 7, 2000 so that Tidewater could pursue its mechanics' lien in state court. Under § 108(c), Tidewater had until the later of the amount of time left on the six month

time limit under Va.Code § 43–17 or 30 days after the lifting of the stay. At that time, Tidewater had four months, less two days, to file suit. The deadline to file suit was June 5, 2000. Tidewater commenced its suit on that date, therefore the enforcement action was timely filed and a judgment on the mechanic's lien may be pursued.

### III. Objection to Proof of Claim

The parties agree that Count IV (objection to Tidewater's Proof of Claim under § 502(d)) depends upon the resolution of Counts II and III. If the lien is not subject to avoidance under §§ 544 and 547 of the Bankruptcy Code, as the Bankruptcy Court held and this Court so holds, the parties agree that Count IV fails. Therefore, Count IV was properly dismissed.

### CONCLUSION

For the foregoing reasons, the decisions of the Bankruptcy Court granting Tidewater's Motion to Dismiss Complaint and denying Plaintiffs' Motion to Alter or Amend and/or for Relief from Judgment are AFFIRMED.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.