**In re Jason Edgar CHAMBERS and Marcy Diane Chambers, Debtors.**

**No. 00–12651.**

United States Bankruptcy Court, N.D. West Virginia.

July 12, 2001.

D. Conrad Gall, Fairmont, WV, for debtors.

Dennis M. Shreve, Clarksburg, WV, for creditor.

### *MEMORANDUM OPINION AND ORDER*

L. EDWARD FRIEND, II, Bankruptcy Judge.

This matter comes before the Court pursuant to the Debtors' Motion to Avoid Judicial Lien and the objection of creditor 84 Lumber Co. ("84 Lumber") thereto. The Debtor is attempting to avoid the perfected mechanic's lien of 84 Lumber. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157.

### *FACTS*

The Debtors, Jason Edgar Chambers and Marcy Diane Chambers ("Debtors"), hired contractor Jerry Loudin ("Loudin") to construct a house in Taylor County, West Virginia. The Debtors obtained a construction loan from Wesbanco and paid Loudin $94,000. Loudin was to use the $94,000 to pay for all materials, labor, and subcontractors. During the course of construction, the Debtors authorized, for the purpose of obtaining building materials, an account with 84 Lumber.

From February 25, 2000 until April 17, 2000, 84 Lumber delivered various building materials to the Debtors. Loudin, however, failed to pay 84 Lumber for these materials. As a result, 84 Lumber filed a $7,639.70 mechanic's lien against the Debtors' property with the Clerk of the County Commission of Taylor County on June 23, 2000.

Almost four months later, on October 18, 2000, the Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, and the Court entered an order of discharge on January 17, 2001. In their petition, the Debtors list 84 Lumber as a creditor holding an unsecured nonpriority claim of $7,639.70. The Debtors list the value of their house as $110,000,[1] with a secured claim against it of $94,500 held by Bank One. The Debtors claim a real estate exemption of $15,500.[2]

On December 28, 2000, the Debtors filed a motion, under 11 U.S.C. § 522(f), to avoid the judicial lien of 84 Lumber on the grounds that it impaired their exemption. Subsequently, on January 2, 2001, 84 Lumber sent the Debtors a Notice of Right to Cure Default. On January 26, 2001, 84 Lumber filed an objection to the Motion to Avoid Judicial Lien on the grounds that the recordation of the mechanic's lien created a statutory lien, not a judicial lien, and, therefore, the lien is not avoidable under § 522(f).

On February 27, 2001, a telephonic preliminary hearing was held in the above-styled case to consider the Debtors' motion to avoid the lien and 84 Lumber's objection. Counsel for the parties were ordered to submit briefs in support of their respective positions. Having received those documents, the Court took the matter under consideration.

## DISCUSSION

■ The Debtors' seek to avoid the mechanic's lien of 84 Lumber under 11 U.S.C. § 522(f). This section provides, *inter alia,* that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption . . . if such lien is . . . a judicial lien . . ." 11 U.S.C. § 522(f)(1)(A). 84 Lumber correctly objected on the grounds that a mechanic's lien is a statutory lien, not a judicial lien.

The Bankruptcy Code defines both "statutory lien" and "judicial lien." The definition of a statutory lien is a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory," but does not include a "security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). A judicial lien is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

■ The legislative history of the Bankruptcy Code indicates that Congress considered mechanics' liens to be statutory liens.

> The definition [of a statutory lien] excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is

---

1. This amount does not include $5,000 remaining in escrow or the $5,000 worth of work remaining to complete the house.

2. The Debtors also claimed the escrowed $5,000 as exempt.

not based on an agreement to give a lien or on judicial action. Mechanics', materialmens', and warehousemens' liens are examples.

S.Rep. No. 95–989 at 27, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5813, quoted in *Concrete Structures, Inc. v. Tidewater Crane and Rigging Co.* (*In re Concrete Structures, Inc.*), 261 B.R. 627, 631–632 (E.D.Va.2001). As a general rule, courts have defined mechanics' liens as statutory liens. *See, e.g., Concrete Structures,* 261 B.R. at 632. However, the issue of whether or not a lien is statutory is a matter of state law. *Concrete Structures,* 261 B.R. at 632, quoting *In re APC Constr. Inc.,* 132 B.R. 690, 693 (D.Vt.1991).

In West Virginia, the various forms of mechanics' liens arise under West Virginia Code Chapter 38, Article 2. A materialman's lien, such as that of 84 Lumber, arises specifically under section 38–2–3. This section provides that:

> Every person, firm or corporation which shall furnish to any owner, for use in the erection, construction, alteration, repair or removal of any building or other structure or improvement appurtenant thereto, any materials, machinery or other equipment or supplies necessary to the completion of such building or other structure or improvement, shall have such a lien for his compensation as is mentioned in section one [§ 38–2–1] of this article.

The methods of perfecting and enforcing materialmens' and other mechanics' liens are set forth later in Article 38 of the West Virginia Code. Section 38–2–7 states, in part, that

> the lien created and authorized by section three [§ 38–2–3] of this article shall be discharged from and after ninety days from the furnishing of the last of the materials, machinery or other sup-

plies and equipment ... unless ... the claimant of any such lien shall have perfected and preserved the same, as hereinafter provided in this article.

Specifically, section 38–2–10 sets forth the requirements for notice and recordation of a materialman's lien:

> For the purpose of perfecting and preserving his lien, every materialman or furnisher of machinery or other necessary equipment, under a contract with the owner, as mentioned in section three [§ 38–2–3] of this article, shall cause to be recorded in the office of the clerk of the county court [county commission] of the county wherein such property is situate, within ninety days from the date when he shall have ceased to furnish material or machinery or other necessary equipment, a notice of such lien, which notice shall be sufficient if in form and effect as that provided in section eight [§ 38–2–8] of this article.

Finally, section 38–2–34 provides a statute of limitation for all mechanics' liens:

> Unless a suit in chancery to enforce any lien authorized by this article is commenced within six months after the person desiring to avail himself thereof shall have filed his notice in the clerk's office, as hereinbefore provided in this article, such lien shall be discharged; but a suit commenced by any person having such lien shall, for the purpose of preserving the same, inure to the benefit of all other persons having a lien under this article on the same property, and such persons may intervene in such suit for the purpose of enforcing their liens, in the same manner as in other chancery suits.

To summarize, under West Virginia law a materialman's lien attaches upon delivery of materials. In order to preserve the lien, the lienholder must record the lien

within ninety days from the last date materials were delivered. From the date of recordation, the lienholder must bring an enforcement suit within six months, or the lien is discharged. Clearly, materialmens' liens, as all mechanics' liens in West Virginia, attach by force of statute. However, the issue of whether mechanics' liens are statutory or judicial is clouded by the fact that the liens must be recorded and enforced through the judicial system within specified time periods.

No cases have addressed the issue of whether mechanics' liens are statutory or judicial under West Virginia law. However, several jurisdictions with mechanic's lien statutes similar to those of West Virginia have concluded that mechanics' liens are statutory liens. *See, e.g., Concrete Structures*, 261 B.R. at 631; *In re APC Constr. Inc.*, 132 B.R. 690, 693 (D.Vt.1991); *In re Ramsey*, 89 B.R. 680 (Bankr. S.D.Ohio 1988); *In re Wisner*, 77 B.R. 395 (Bankr.N.D.N.Y.1987); *In re Piambino*, 45 B.R. 243 (Bankr.S.D.Fla.1984). This Court finds, with respect to West Virginia law, in accord with those jurisdictions.

■ West Virginia Code section 38–2–7 refers to mechanics' liens as liens "created and authorized" by Chapter 38. Under the Bankruptcy Code, "a judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding." 2 Collier on Bankruptcy § 101.53. In West Virginia, the mechanics' liens arise and are created by the force of statute, and are merely enforced through judicial proceedings. Therefore, since a mechanic's lien under West Virginia law is a statutory lien, the Court finds that the Debtor may not avoid the lien of 84 Lumber under § 522(f).

The Debtors acknowledge, in their response to 84 Lumber's objection, that 84 Lumber's lien is not a judicial lien. They assert, however, that the lien is discharged under West Virginia Code section 38–2–34 because no suit to enforce such lien was filed within the appropriate time period. The Debtor further asserts that 84 Lumber should have filed a motion to lift the automatic stay in order to enforce its lien.

■ 84 Lumber argues that § 108(c) of the Bankruptcy Code tolls the statutory enforcement period governing mechanics' liens once a petition in bankruptcy has been filed. 11 U.S.C. § 108 provides, *inter alia*, that

if applicable non-bankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be with respect to such claim.

Contrary to 84 Lumber's assertion, this section does not provide for the tolling of an externally imposed time bar, but rather, only calls for time deadlines, which have not expired before the filing of the bankruptcy petition, to be extended for thirty days after the termination of the stay if such deadline had fallen on an earlier date. *See, e.g., Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir.1993); *Crysen/Montenay Energy Co. v. E & C Trading Ltd. (In re Crysen/Montenay Energy Co.)*, 166 B.R. 546, 554–555 (S.D.N.Y.

1994) (citing *Aslanidis* ). It is not necessary to invoke § 108(c) in the instant case.

 West Virginia Code section 55–2–22 defines the effect of bankruptcy on the running of any statute of limitation. This section provides that:

> The running of any statute of limitation shall be tolled for any claim or cause of action for which the prosecution of the same within the period of limitation has been stayed by the provisions of the United States bankruptcy code or by an order entered in a bankruptcy proceeding pending the duration of the stay or the effective period of the order and of a period thereafter of the remaining period of limitation or for one year, whichever is longer.

Under this section, the running of West Virginia mechanic's lien statutes of limitation are tolled when a bankruptcy petition is filed. In the instant case, more than two months of the sixth-month enforcement period remained at the moment of the bankruptcy filing. The petition tolled the running of the statute for the longer of 1) the duration of the stay and the remaining period of limitation; or 2) one year. In this case, the duration of the stay was three months, and the remaining period of limitation two months, for a total of five months. Since this is less than one year, the running of the statute of limitation is instead tolled for one year from the date of the filing of the bankruptcy petition. As a result, the statute of limitation for 84 Lumber to enforce its lien does not run until October 18, 2001.

 The Debtors raised the argument that 84 Lumber should have lifted the stay to enforce its lien during the pendency of the bankruptcy and within the original statutory time frame. However, the Debtors cite no authority for this proposition. Further, the Ninth Circuit Court of Appeals has rejected such a proposition in a similar case, stating that

> [The Debtor] also argues that [the mechanic's lienholder] could have commenced his action to enforce his lien if he had only applied for relief from the automatic stay. This argument, however, assumes relief from the stay would have been granted. Moreover, it would require [the lienholder] to do something to perfect his lien which the Bankruptcy Code does not require. [The Debtor] cites no authority for this argument and we reject it.

*Miner Corp. v. Hunters Run L.P.* (*In re Hunters Run L.P.*), 875 F.2d 1425 (9th Cir.1989). Accordingly, this Court rejects the Debtors' argument in the instant case.

### CONCLUSION

For the above reasons, the Debtors' Motion to Avoid Judicial Lien is hereby **DENIED**. The Court further finds that under West Virginia Code section 55–2–22, the statute of limitation governing the enforcement of 84 Lumber's lien does not run until one year from the date of the Debtors' bankruptcy petition, or October 18, 2001. It is **SO ORDERED**.