**In re Corey CUNNINGHAM and Susan Cunningham, Debtors.**

No. 11–22497 JPK.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Aug. 14, 2012.

Amanda C. Hires, Law Office of Weiss & Schmidgall, PC, Christopher R. Schmidgall, Merrillville, IN, for Debtors.

## MEMORANDUM OF DECISION CONCERNING CONTESTED MATTER

**J. PHILIP KLINGEBERGER,**
Bankruptcy Judge.

This Chapter 13 bankruptcy case was initiated by a petition filed by the debtors Corey Cunningham and Susan Cunningham (collectively "Cunningham") under Chapter 13 of the United States Bankruptcy Code on June 27, 2011. On October 11, 2011, as record # 44, Cunningham filed a Motion to Avoid Judicial Lien pursuant to 11 U.S.C. § 522(f)(1)(A) with respect to a lien interest of Timber Ridge Landscaping, Inc. concerning Cunningham's residence. Timber Ridge Landscaping, Inc. ("Timber Ridge") filed a response to that motion on November 4, 2011 (record # 50). By record order # 54, the court directed the parties to submit legal memoranda concerning the issue addressed in that docket entry, with which the parties complied.

The matter before the court is a contested matter pursuant to Fed.R.Bankr.P. 9014. The court will not burden this decision with recitations of the basis for its jurisdiction: the parties have consented to the court's jurisdiction, and final judgment authority, with respect to this matter.

Based upon the record before the court, including the parties' legal memoranda, the issues presented for determination are the following:

1. Is a "mechanic's lien" asserted under the provisions of Indiana law a "judi-cial lien" subject as a matter of law to avoidance under 11 U.S.C. § 522(f).

2. If the answer to issue one is in the negative, when a mechanic's lien is foreclosed upon under Indiana law and a judgment of foreclosure on the lien is obtained, does the underlying mechanic's lien become a "judicial lien" subject to 11 U.S.C. § 522(f) as a result of the judgment of foreclosure of the mechanic's lien.

The record before the court establishes that Timber Ridge filed a Notice of its intention to hold a mechanic's lien with the Recorder's Office of Lake County, Indiana—with respect to residential real estate located at 11911 Burr Street, Crown Point, Indiana—on September 21, 2009. On December 30, 2009, Timber Ridge filed a complaint to foreclosure its mechanic's lien in state court, and on March 18, 2010 was granted a judgment by default with respect to foreclosure.[1]

The first issue to be addressed by the court is the nature of the lien held by Timber Ridge under the State of Indiana's mechanic's lien statutes. Based upon the record, there is no basis to determine that the lien is a "security interest" as defined by 11 U.S.C. § 101(51), because there is no evidence that the lien interest of Timber Ridge—whatever it might be—was acquired "by an agreement". The underlying lien of Timber Ridge is either a "statutory lien" as defined by 11 U.S.C. § 101(53), or it is a "judicial lien" as defined by 11 U.S.C. § 101(36).

11 U.S.C. § 101(53) defines "statutory lien" as follows:

---

1. In footnote 2 of their legal memoranda, Cunningham reserves the right to contest the validity of the underlying mechanic's lien by means of an adversary proceeding pursuant to Fed.R.Bankr.P. 7001. The issue before the court relates to questions of law, on the assumption that Timber Ridge obtained a lien in some manner by recording a statement of its intention to hold a lien, and then obtained a judgment in a state court by which that lien was foreclosed. Cunningham is cautioned that while the judgment of foreclosure of the lien may not have collateral estoppel effect due to its entry as a default judgment, a judgment by a state court has nevertheless been entered: challenging that judgment potentially invokes the principles of the *Rooker–Feldman* doctrine.

The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(36) defines "judicial lien" as follows:

The term "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

Cunningham does not appear to seriously contest that Timber Ridge's lien initially constituted a "statutory lien". Cunningham's arguments seem to be directed to the contention that the actions of foreclosure of the lien by Timber Ridge and obtaining of a judgment of foreclosure transformed whatever the lien might have been into a judicial lien subject to avoidance under 11 U.S.C. § 522(f), primarily by Cunningham's contention that the underlying lien merged into the judgment and thereby became a "judicial lien".

■ Be that as it may, let's first put to rest the nature of a mechanic's lien as a "statutory lien" or as a "judicial lien", without consideration of the merger argument advanced by Cunningham.

The two principal provisions of Indiana law have been set out in Cunningham's legal memorandum. The first of these is IC 32–28–3–3, which states:

(b) This subsection applies to a person that performs labor or furnishes materials or machinery described in section 1 of this chapter related to a Class 2 structure (as defined in IC 22–12–1–5) or an improvement on the same real estate auxiliary to a Class 2 structure (as defined in IC 22–12–1–5). A person who wishes to acquire a lien upon property, whether the claim is due or not, must file in duplicate a sworn statement and notice of the person's intention to hold a lien upon the property for the amount of the claim:

(1) in the recorder's office of the county; and

not later than sixty (60) days after performing labor or furnishing materials or machinery described in section 1 of this chapter.

IC 32–28–3–6 states:

(a) A person may enforce a lien by filing a complaint in the circuit or superior court of the county where the real estate or property that is the subject of the lien is situated. The complaint must be filed not later than one (1) year after:

(1) the date the statement and notice of intention to hold a lien was recorded under section 3 [IC 32–28–3–3] of this chapter;

. . .

(d) If the lien is foreclosed under this chapter, the court rendering judgment shall order a sale to be made of the property subject to the lien. The officers making the sale shall sell the property without any relief from valuation or appraisement laws.

Indiana thus has a two-step process to fully determine a mechanic's lien. The first step is the assertion of the lien by recording of a notice pursuant to IC 32–28–3–3. The lien is then determined and implemented by IC 32–28–3–6.

■ Three types of liens are dealt with by the Bankruptcy Code: judicial liens, security interests, and statutory liens. As stated in *In re Dunn*, 109 B.R. 865, 867 (Bankr.N.D.Ind.1988):

A "judicial lien" is defined at 11 U.S.C. § 101(32) (formerly 11 U.S.C. § 101(27)

and (30) as redesignated by the Bankruptcy Amendment Act of 1984 and the Bankruptcy Act of 1986), as follows: " 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." *Cf.* "lien" which is defined as a "charge against, or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(33). A "statutory lien" means a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute, and whether or not such interest or lien is made fully effective by statute;" 11 U.S.C. § 101(47).

A "security interest" means a "lien created by an agreement". 11 U.S.C. § 101(45). *See also,* "Agreement" defined at § 101(44).

As noted in the House and Senate Reports as to the definition of "liens", *the concept of lien is divided into three kinds of liens; judicial* liens, *security* interests, and *statutory* liens. *Those three categories are mutually exclusive, and are exhaustive, except for certain common law liens.* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), 1978 U.S.C.C.A.N. 5963; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 25 (1978), (emphasis supplied), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5811, 6269. *Reprinted* in Norton Bankruptcy Law and Practice and Related Legislation, Legislative History, and Editorial Commentary, 1987–1988, Edition. P. 38.

Also, the Senate and House Reports as to the definition of a "statutory lien", state that the definition of a statutory lien excludes judicial liens whether or not they are provided for, or are dependent on a statute, and whether or not they are made fully effective by statute. The Reports further note that *a statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action.* (Emphasis added). **Mechanics, materialmen's, warehousemen's and tax liens are given as examples of statutory liens. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 314 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5813, 6271.** *Id.* at 48. **(Emphasis added).** (Emphasis supplied)

While this court is not a huge adherent to construing statutes by means of Congressional commentary which accompanied the enactment of legislation or the submission of legislation, in the instant case the intent of the Bankruptcy Code in defining a "mechanic's lien" as a statutory lien is absolutely clear, as noted above, and in *In re McCain,* 2007 WL 1611113 (Bankr. D.Mont.2007):

> The avoidance of liens, in general, is governed by 11 U.S.C. § 522(f), which provides in relevant part:
>
> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5)[.]
>
> By its plain terms, § 522(f)(1) applies only to judicial liens. Liens are generally categorized as judicial liens, statutory liens or consensual liens. "Those three categories are mutually exclusive and are exhaustive except for certain com-

mon law liens." *In re Harpole,* 260 B.R. 165, 19 Mont. B.R. 91, 98 (Bankr. D.Mont.2001), *citing* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977). The terms "judicial lien" and "statutory lien" are both defined in the Bankruptcy Code. A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A statutory lien, on the other hand, is a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute". 11 U.S.C. § 101(53). " '**A statutory interest is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics' [construction], materialmen's and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien.'** *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S.C.C.A.N. 5963 at 6271. *See also In re Zerger,* 35 B.R. 42, 43–4 (Bankr.Or.1983); *In re Koski,* 149 B.R. 170, 176–77 (Bankr.[D.]Idaho 1992); *In re O'Connell,* 13 Mont. B.R. 271, 274–75 (Bankr.Mont.1994)." (Emphasis supplied)

Case law throughout the country has routinely determined that a mechanic's lien, or similar liens arising by means of a state's statutory enactment, are at their base statutory liens. While it may be somewhat overkill to quote extensively from decisions which have so determined, the court deems it appropriate to do so, particularly with reference to the concept that the nature of a lien as either a "judicial lien" or a "statutory lien" is determined by means of the manner in which the lien arises originally, and not by the manner by which it is enforced. The following cases are illustrative. In *In re Ramsey,* 89 B.R. 680, 681–682 (Bankr. S.D.Ohio 1988) [decided under Ohio law which appears to be very similar to Indiana's law], the following was stated:

> The sole issue before the court is whether a mechanics' lien obtained in accordance with Ohio law constitutes a "judicial lien" as defined by the Bankruptcy Code and is, thereby, avoidable under 11 U.S.C. § 522(f). In general, the Bankruptcy Code divides the concept of lien into three types of liens: judicial liens, security interests, and statutory liens. These "three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6269. A "security interest" is a lien created by agreement, 11 U.S.C. § 101(45), and is obviously not applicable to the instant proceeding. The inquiry is whether a mechanics' lien is to be classified as a "judicial lien" or as a "statutory lien," which are defined by the Bankruptcy Code as follows:

> "Judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. 11 U.S.C. § 101(32).

> "Statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute. 11 U.S.C. § 101(47).

While the definition of a judicial lien is arguably of sufficient breadth to encompass a mechanics' lien, the legislative history of the Bankruptcy Code makes it quite clear that Congress envisioned a mechanics' lien as falling within the definition of a "statutory lien":

A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 6271.

Case law has been consistent with this congressional intent and construes mechanics' liens as "statutory liens" and not avoidable under Section 522(f). *See, e.g., In re Wisner,* 77 B.R. 395 (Bankr. N.D.N.Y.1987); *In re Piambino,* 45 B.R. 243 (Bankr.S.D.Fla.1984); *Reardon v. Mechanics Savings Bank (In re Reardon),* 10 B.R. 697 (Bankr.Conn.1981).

In addition Congress' characterization of a mechanics' lien as a "statutory lien" comports with the nature of a mechanics' lien obtained in Ohio:

The right of one who furnishes labor or material for the construction or repair of a structure to a lien therefor is *created entirely by statute. . . . The Mahoning Park Co. v. The Warren Home Development Co.,* 109 Ohio St. 358, 364, 142 N.E. 883, 885 (1924) (Emphasis Supplied).

Under Ohio law, once a lien claimant has complied with certain procedural requirements of Ohio Rev.Code § 1311.01 *et seq.* and filed an affidavit in the office of the proper county recorder, the lien attaches and relates back to the date that work on the project began. Ohio Rev.Code § 1311.13. The lien is a statutory lien, and not a judicial lien, because no judicial action was necessary for its creation. It arose upon respondent's compliance with the requirements of Ohio's mechanics' lien statute.

In *In re Souers,* 163 B.R. 346, 349 (Bankr. S.D.Iowa 1994) [decided under Iowa's law], the following was stated:

Section 101(53) defines a statutory lien as

[a] lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

While the Code does not specifically provide that a mechanic's lien is a statutory lien, legislative history is helpful and provides in part:

A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of a statutory lien.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978); *see* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 14 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787 at 5813, 6271.

The Court finds that a mechanic's lien is a statutory lien within the meaning of 11 U.S.C. § 101(53).

In *In re Chambers,* 264 B.R. 818, 822 (Bankr.N.D.W.Va.2001) [decided under West Virginia law], the following was stated:

No cases have addressed the issue of whether mechanics' liens are statutory

or judicial under West Virginia law. However, several jurisdictions with mechanic's lien statutes similar to those of West Virginia have concluded that mechanics' liens are statutory liens. *See, e.g., Concrete Structures,* 261 B.R. at 631; *In re APC Constr. Inc.,* 132 B.R. 690, 693 (D.Vt.1991); *In re Ramsey,* 89 B.R. 680 (Bankr.S.D.Ohio 1988); *In re Wisner,* 77 B.R. 395 (Bankr.N.D.N.Y. 1987); *In re Piambino,* 45 B.R. 243 (Bankr.S.D.Fla.1984). This Court finds, with respect to West Virginia law, in accord with those jurisdictions.

West Virginia Code section 38–2–7 refers to mechanics' liens as liens "created and authorized" by Chapter 38. Under the Bankruptcy Code, "a judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding." 2 Collier on Bankruptcy § 101.53. In West Virginia, the mechanics' liens arise and are created by the force of statute, and are merely enforced through judicial proceedings. Therefore, since a mechanic's lien under West Virginia law is a statutory lien, the Court finds that the Debtor may not avoid the lien of 84 Lumber under § 522(f).

In *In re Helms,* 438 B.R. 95, 96–98 (Bankr. W.D.N.C.2010) [decided under North Carolina law], the following was stated:

13. Section 101(36) of the Code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." Conversely, section 101(52) of the Code defines "statutory lien" as a "lien arising solely by force of a statute on specified circumstances or conditions...." As a result, section 522(f)(1) expressly provides relief only for judicial liens and does not allow a debtor·to avoid statutory liens. *See In re Chambers,* 264 B.R. 818 (Bankr.N.D.W.Va. 2001); Collier on Bankruptcy, ¶ 522.11.

14. The Judgment constitutes a mechanics' lien. The legislative history of the Bankruptcy Code indicates that Congress considered mechanics' liens to be statutory liens:

The definition [of a statutory lien] excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action. Mechanics', materialmens', and wharehousemens' liens are examples.

S.Rep. No. 95–989 at 27, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin. News 1978, at 5787, 5813, quoted in *In re Chambers,* 264 B.R. 818, 820–21 (Bankr.N.D.W.Va.2001). As a general rule, courts have defined mechanics' liens as statutory liens. *See, e.g., In re Concrete Structures, Inc.,* 261 B.R. 627, 631–32 (E.D.Va.2001).

15. In North Carolina, the various forms of mechanics' liens against real property arise under North Carolina Code Chapter 44A, Article 2 entitled "Statutory Liens on Real Property." A materialman's lien, such as that of Belfor, arises specifically under section 44A–8. This section provides that:

Any person who performs or furnishes labor.... pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have a right to file a claim of lien on real property on the real property to secure payment of all debts owing for labor done or professional

design or surveying services or material furnished or equipment rented pursuant to the contract.

16. The methods of perfecting and enforcing materialmens', laborers' and other mechanics' liens are set forth later in Article 2 of the North Carolina Code Section 44A–12 states, in part that:

All claims of lien on real property must be filed in the office of the clerk of superior court in each county where the real property subject to the claim of lien on real property is located. The clerk of superior court shall note the claim of lien on real property on the judgment docket and index the same under the name of the record owner of the real property at the time the claim of lien on real property is filed. . . .

Claims of lien on real property may be filed at any time after the maturity of the obligation secured thereby but not later than 120 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the lien.

17. Finally, sections 44A–13 and 44A–16(3) provide a statute of limitations for enforcing mechanics' and materialmans' liens:

An action to enforce a claim of lien on real property may be commenced in any county where venue is otherwise proper. No such action may be commenced later than 180 days after the last furnishing of labor or materials at the site of the improvement by the person claiming the claim of lien on real property.

\* \* \*

Any claim of lien on real property filed under this Article may be discharged by any of the following methods ... (3) By failure to enforce the claim of lien on real property within the time prescribed in this Article.

18. Accordingly, under North Carolina law a materialman's lien attaches upon delivery of materials. In order to preserve the lien, the lienholder must record the lien within 120 days from the last date work was performed. From the date of recordation, the lienholder must bring an enforcement suit within six months, or the lien is discharged. As a result, materialmens' liens, as all mechanics' liens in North Carolina, attach by force of statute.

19. Several jurisdictions with mechanics' lien statutes similar to those of North Carolina have concluded that mechanics' liens are statutory liens. *See, e.g. In re Chambers,* 264 B.R. 818, 820–21 (Bankr.N.D.W.Va.2001); *Concrete Structures,* 261 B.R. at 631; *In re APC Constr. Inc.,* 132 B.R. 690, 693 (D.Vt. 1991); *In re Ramsey,* 89 B.R. 680 (Bankr.S.D.Ohio 1988); *In re Wisner,* 77 B.R. 395 (Bankr.N.D.N.Y.1987); *In re Piambino,* 45 B.R. 243 (Bankr.S.D.Fla. 1984). Indeed, North Carolina Chapter 44A is titled "Statutory Liens and Charges" and Article 2 is titled "Statutory Liens on Real Property."

20. Under the Bankruptcy Code, "a judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding." 2 Collier on Bankruptcy § 101.53. In North Carolina, mechanics' liens arise and are created by the force of statute, and are merely enforced through judicial proceedings.

21. Therefore, since a mechanics' lien under North Carolina law is a statutory lien, the Debtors may not avoid the Judgment, including the Claim of Lien, under Section 522(f).

In *Concrete Structures, Inc.*, 261 B.R. 627, 632 (E.D.Va.2001) [decided under Virginia law], the following was stated:

"Whether or not [a] lien is statutory is purely a matter of state law." *In re APC Constr., Inc.* 132 B.R. 690, 693 (D.Vt.1991). *See In re Wisner,* 77 B.R. 395, 397 (Bankr.N.D.N.Y.1987) ("In order to determine whether [a] mechanic's lien is judicial of statutory, it is appropriate to first consider New York state law to see whether the lien is created by operation of statute"). Virginia law clearly concludes that mechanics' lien are statutory in nature.

To begin, it is well to remember that the mechanics' lien claimed by Tidewater was unknown at common law. *Neff v. Garrard,* 216 Va. 496, 219 S.E.2d 878, 879 (1975). The lien, of course, has its foundation in the mechanics' contract and it is the performance of that contract by the mechanic that gives rise to an inchoate lien which is made choate, *i.e.,* created, by statute. *United Masonry, Inc. v. Riggs Nat'l Bank,* 233 Va. 476, 357 S.E.2d 509, 511 (1987) (citing *Sergeant v. Denby,* 87 Va. 206, 12 S.E. 402, 402 (1890); *Hadrup v. Sale,* 201 Va. 421, 111 S.E.2d 405, 407 (1959); *Weaver v. Harland Corp.,* 176 Va. 224, 10 S.E.2d 547, 549 (Va.1940)).

Virginia decisional law has for over a century made clear that "[a] mechanic's lien is purely a creature of statute." *Wallace v. Brumback,* 177 Va. 36, 12 S.E.2d 801, 802 (1941) (holding that the statute requires a memorandum of a mechanic's lien to name the owner of the property at the time the lien is filed, not the owner of the property at the time the materials are furnished). *See First American Bank of Virginia v. J.S.C. Concrete Constr., Inc.,* 259 Va. 60, 523 S.E.2d 496, 497 (2000) ("Although [a mechanics'] lien is a creature of statute, the lien must have its foundation in a con-

tract, with which the lien must correspond."); *Kayhoe Constr. Corp. v. United Virginia Bank,* 220 Va. 285, 257 S.E.2d 837, 840 (1979) ("A mechanic's lien is purely a creature of statute. It has no existence in the common law, and, independently of statute, is unknown in equity."); *Neff,* 219 S.E.2d at 880 (holding that both the right and remedy of a mechanic's lien are creatures of statute); *Feuchtenberger v. Williamson, Carroll & Saunders,* 137 Va. 578, 120 S.E. 257, 259 (1923) ("the lien and the jurisdiction of the court depend upon the statute, and not upon equitable or ethical rules."); *Sergeant,* 12 S.E. at 402 ("although the lien is a creature of the statute, it must have its foundation in a contract").

. . .

Likewise, the statute provides that "[a]ll persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure ... *shall have a lien,* if perfected as hereinafter provided. . . ." Va. Code § 43–3 (emphasis added). Relevant decisional law and the plain words of the statute make clear that the lien arises "solely by force of statute on specified circumstances or conditions." 11 U.S.C. § 101(53). These specified circumstances are set forth in Va.Code § 43–3. Then, section 43–4 provides the specifics of perfection, such as filing a memorandum of lien within 90 days of the completion of work, where to file such memorandum and what it should contain. **These instructions are precisely those contemplated by § 101(53) which indicates that a statutory lien arises by statute (here, the Virginia mechanic's lien statute) on specified circumstances and conditions (those set forth in § 43–4).** *See 2 Collier on*

*Bankruptcy* ¶ 101.53 ("While the filing of the lien may determine whether it is perfected to the extent that it may not be avoided under section 545, it does not transmute a statutory lien into a different kind of lien").

C.  Relevant Federal Case Law

The decision reached here is harmonious with the conclusions of other federal courts considering analogous state law provisions.  In the thoughtful decision of *In re APC Constr. Inc.*, 132 B.R. 690 (D.Vt.1991), the district court construed Vermont's mechanics' lien statute, which is analogous in many respects to Virginia's statute, to be a statutory lien.  The court observed that the Vermont statute and decisional law provided that "when a contract is made for improving real property or for furnishing labor or material for improvements, the contractor shall have a lien on the improvements and the land to secure the payment for the improvements or materials." *Id.* at 693.  That, of course, is the case under Virginia's statute.  *See* Va.Code § 43–3 ("All persons performing labor or furnishing materials ... for the construction, removal, repair or improvement of any building or structure ... shall have a lien, if perfected as hereinafter provided ..."); *United Masonry*, 357 S.E.2d at 512 ("A mechanic's lien, although a statutory creation, has its foundation in a contract and it is a contractor's performance under the contract that gives rise to the inchoate lien."); *Hadrup*, 111 S.E.2d at 407 ("an inchoate lien attaches when the work is done and materials furnished which may be perfected within the specified time").

The court then observed that under Vermont law, "the property is charged with a contractor's lien when the claimant files notice of lien by written memorandum with the town clerk." *APC Constr.*, 132 B.R. at 693.  The same is true of Virginia law.  *See* Va.Code § 43–4 ("A general contractor, or any other lien claimant ... in order to perfect the lien given by § 43–3 ... shall file a memorandum of lien ... in the clerk's office in the county or city in which the building [or] structure ... is located").

Lastly, again similar to Virginia law, the Vermont statute requires the lienor to seek a writ of attachment within a specified time of the filing of the memorandum.  *APC Constr.*, 132 B.R. at 693–94.  Virginia law, too, provides for a separate suit to enforce the lien.  *See* Va.Code § 43–17 ("No suit to enforce any lien perfected under §§ 43–4, 43–5, and 43–7 to 43–10 shall be brought after six months from the time when the memorandum of lien was recorded ...").

Thus, like Virginia law, Vermont law provides that a:

> mechanic's lien exists the moment the work on the property begins.  Whereas 'a mechanic's lien takes effect when the requisite memorandum is filed in the proper office,' and the owner and the world have notice that the property stands charged with the payment of bills of the creditor.  Up to this point, the contractor lienor does not need to resort to any judicial process to obtain his lien on the property.

*APC Constr.*, 132 B.R. at 694 (quoting *T.A. Haigh Lumber Co. v. Drinkwine*, 130 Vt. 120, 287 A.2d 560, 564 (1972)).  Hence, the court found it insignificant that the lienor must resort to the courts in order to enforce the lien:

> the Bankruptcy Code categorizes a lien by the way it is established, not by how it is preserved.  A statutory lien is a lien "arising" because of "specified circumstances or conditions" laid out in the statute.  Characterizing a contractor's lien as "incho-

ate" before a writ of attachment is obtained does not change the fact that it exists.

*Id.*

As the Second Circuit, in *In re The Lionel Corp.*, 29 F.3d 88 (2d Cir.1994), has quite clearly explained:

> [t]he Code thus contemplates that liens created consensually (such as mortgage liens or UCC security interests) or by judicial action (such as judgment liens, attachments, equitable liens or levies) are not "statutory liens," while liens that come into being as a result of statutory operation, without consent or judicial action, are "statutory liens." Given this scheme, we believe that mechanic's liens qualify as statutory liens. The legislative history to § 101(53) confirms this conclusion.

*Id.* at 94 (citing H.R.Rep. No. 95–595 at 314, 95th Cong. 1st Sess. (1978); S.Rep. No. 95–989 at 27, 95th Cong. 2d Sess. (1978)).

For the foregoing reasons, the law of Virginia and the Bankruptcy Code, given their plain meaning and considered together, make clear that a mechanics' lien is properly considered to be a statutory lien so that it falls within the exception provided in 11 U.S.C. § 546(c)(6).[FN5] Therefore, the Bankruptcy Court was correct in dismissing Count II of the Complaint and in declining to amend its decision.

> FN5. *Accord In re Souers,* 163 B.R. 346, 349 (Bankr.S.D.Iowa 1994) (relying on the legislative history of the Bankruptcy Code to conclude that "a mechanics' lien is a statutory lien within the meaning of 11 U.S.C. § 101(53)). Further, the attachment or perfection of a statutory lien during the preference period is not generally avoidable as it falls within the scope of

§ 547(c)(6)."; *In re Wisner,* 77 B.R. 395, 397 (Bankr.N.D.N.Y.1987) (collecting cases and holding that New York mechanics' liens were creatures of statute and were therefore statutory liens); *In re Seel,* 22 B.R. 692, 695 (Bankr.D.Kan.1982) (holding that the Kansas statute for mechanics' lien "was virtually the same as the definition provided by the Code" for statutory liens, and was therefore not a security interest); *In re Ribeiro,* 7 B.R. 359, 361 (Bankr.D.Mass.1980) (holding that under Massachusetts law a mechanics' lien is wholly a creature of statute and arises out of the circumstances under which the work is done and the materials are furnished). (Emphasis supplied)

Similarly to the state laws interpreted by the foregoing decisions, Indiana's mechanic's lien statutes give rise to the lien by the recording of a notice of intention to hold the lien, a lien origin provided solely by statute without any judicial intervention. This lien notice constitutes a cloud on title as soon as it is filed, and it is subject to final enforcement by the mechanism provided by Indiana law for its foreclosure by means of litigation filed within one year of the date of its filing. As a result, Timber Ridge's lien—arising as it does from the recording of a notice of intention to hold the lien pursuant to Indiana law—at its inception constituted a statutory lien. As such, leaving it there, Timber Ridge's mechanic's lien would not be subject to 11 U.S.C. § 522(f), which by its express terms applies only to a "judicial lien".

■ As stated, Cunningham does not seem to seriously contest that the initial assertion of a mechanic's lien by the filing of a notice of intent with the recorder's office constitutes a "statutory lien". Cunningham focuses on the fact that Timber

Ridge filed suit to foreclose the lien and obtained a judgment of foreclosure with respect to the lien. As a result, Cunningham contends, the statutory lien of Timber Ridge was converted into a "judicial lien" by the doctrine of merger, and thus became subject to avoidance under 11 U.S.C. § 522(f).

There is no decided case binding upon this court concerning the specific contention of merger advanced by Cunningham in relation to a mechanic's lien.[2] However, as noted above, the designation of a lien as a "judicial lien", a "statutory lien", or a "security interest" depends upon the initial manner in which the lien arises. The court does not endorse the concept that judicial enforcement of a lien so determined as something other than a "judicial lien" becomes a "judicial lien" because judicial action is taken to enforce it and a judgment regarding enforcement is obtained.

In the general context of conversion of a non-judicial lien into a "judicial lien" by obtaining a judicial decree of enforcement of the non-judicial lien, the following was stated in *In re Goodwin*, 133 B.R. 141, 143 (Bankr.S.D.Ind.1990):

4. The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on November 17, 1989. In her schedules she lists the Harlans as a secured creditor with a claim of $18,555.00, and lists as exempt property a china cabinet and two antique chairs valued at $1900.00 and Morrocan leather valued at $1100.00. The Debtor admits that these items were subject to the Bond. In her Motion to Avoid Lien, she seeks to avoid the Harlans' lien on these items, asserting that it is a nonpossessory, nonpur-

chase-money security interest in household and personal goods avoidable under 11 U.S.C. section 522(f).

5. At the hearing, the Debtor seemed to have switched theories, asserting that the Harlans' lien was an avoidable judicial lien under 11 U.S.C. section 522(f)(1), rather than a nonpossessory, nonpurchase-money security interest avoidable under 11 U.S.C. section 522(f)(2). The Court will address both theories.

6. A debtor may avoid the fixing of a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled, if the lien is a judicial lien, 11 U.S.C. section 522(f)(1), or if the lien is a nonpossessory nonpurchase-money security interest in certain types of items, including household furnishings and wearing apparel, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor, 11 U.S.C. section 522(f)(2)(A).

7. A judicial lien means one "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. section 101(32). A security agreement means "a lien created by agreement." 11 U.S.C. section 101(44). The Harlans did not obtain their lien on the items at issue by judgment of the state court, but by the Bond the Debtor gave earlier in the proceeding. The Debtor agreed to give the Bond to retain the restaurant premises during the state action. Although she might have felt compelled to agree to the Bond in order to protect her interests while the suit was pending, considerations of this type often compel debt-

---

2. Those cases would be cases decided by the United States Supreme Court, by the United States Court of Appeals for the Seventh Circuit, or by the United States District Court for the Northern District of Indiana specifically, or perhaps law decided by Indiana courts, primarily by the Indiana Supreme Court, but potentially by the Indiana Court of Appeals.

ors to agree to liens. Few debtors would give a creditor a security interest in their property if they could obtain the benefit they seek without doing so. **The Harlans' lien, therefore, is a security interest, and the fact that the state court judgment later recognized the lien and empowered the Harlans to enforce it does not change its character to a judicial lien.** *See In re Dunn,* 10 B.R. 385 (Bankr.W.D.Okla.1981) (judicial approval of property settlement agreement does not convert security agreement contained therein into a judicial lien); *In re Miller,* 8 B.R. 672 (Bankr.N.D.Iowa 1981) (foreclosure judgment does not convert mortgage lien into judicial lien). The Harlans' lien is therefore not avoidable under 11 U.S.C. section 522(f)(1). (Emphasis supplied)

In the context of Oklahoma law, the following was stated in *In re Nichols,* 265 B.R. 831, 834–835 (10th Cir. BAP 2001) in the context of a security interest being converted to a judicial lien by means of enforcement of the security interest:

Furthermore, Armstrong's security interest is not transformed into a judicial lien as a result of the state court's foreclosure decree. In discussing the type of liens avoidable under § 522(f)(1), we have stated:

"It is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien." [*In re Sanders,* 61 B.R. 381, 383 (Bankr.D.Kan.1986) ]. Just because a creditor resorts to the judicial process to enforce the lien, it does not mean the lien is a judicial lien [avoidable under § 522(f)(1)(A) ].

*Thompson,* 240 B.R. at 781. In *Thompson,* a lien against the debtor's exempt homestead created by a prepetition antenuptial agreement was not transformed into a "judicial lien" avoidable under § 522(f)(1)(A) because a state court had entered a judgment setting the amount of the lien.

As in *Thompson,* the origin of Armstrong's lien was consensual, and it was not transmuted into a judicial lien when the Creditors obtained a foreclosure decree from the state court. Indeed, it is well-settled under Oklahoma law that a mortgage lien is neither merged into a foreclosure decree nor extinguished by a foreclosure decree, and that a foreclosure decree in no way creates a lien, but rather is a means of enforcing the lien created by contract. *Methvin v. American Sav. & Loan Assoc.,* 194 Okla. 288, 151 P.2d 370, 377 (1944); *Anderson v. Barr,* 178 Okla. 508, 62 P.2d 1242, 1246 (1936); *Bank of the Panhandle v. Hill,* 965 P.2d 413, 417 (Okla.Civ.App.1998). A mortgage lien is extinguished only by foreclosure sale. 42 Okla. Stat. Ann. § 22 (1990). Thus, when the state court entered its foreclosure decree, Armstrong's consensual security interest continued to exist, and a new "judicial lien" was not created. Furthermore, on the debtor's petition date, Armstrong had a security interest in Parcel C under Oklahoma law because the foreclosure sale, which would have extinguished her consensual lien, had not been confirmed and was stayed pursuant to § 362(a). Based on this analysis, there is no judicial lien to which § 522(f)(1)(A) applies. The rule that a security interest is not transformed into a judicial lien by a prepetition foreclosure decree is in accord with other cases on this issue. *In re Goodwin,* 133 B.R. 141, 143 (Bankr. S.D.Ind.1990) (citing cases, including *In re Dunn,* 10 B.R. 385 (Bankr.W.D.Okla. 1981)); *Miller v. United States (In re Miller),* 8 B.R. 672, 673 (Bankr. N.D.Iowa 1981), *reaffirmed in In re Sinnard,* 91 B.R. 850, 854 (Bankr.

N.D.Iowa 1988) (citing numerous cases); *see In re Vincent,* 260 B.R. 617, 621 (Bankr.D.Conn.2000) (rejecting the idea that this could happen). In *Miller,* the court reached this conclusion after thoughtful analysis:

> There is nothing in the legislative history of the Code that would indicate that Congress intended that a diligent creditor who obtained a judgment in foreclosure with respect to his security interest would thereby lose his rights through avoidance in the bankruptcy proceedings by the use of § 522(f)(1). It seems clear that the provision for avoidance of judicial liens was meant to apply to judgements obtained on debts that would otherwise be unsecured.

8 B.R. at 673. This statement has since been validated in a different context in *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

In *Farrey,* the Court held that § 522(f)(1)(A) applies only if a debtor has an interest in property prior to the judicial lien attaching. As part of its analysis, the Court explained that, in enacting § 522(f)(1)(A), Congress limited the long-standing rule permitting all prepetition liens to be enforced against exempt property, by allowing judicial liens obtained by creditors whose interests would have otherwise been unsecured to be undone. *Id.* at 298–99, 111 S.Ct. 1825. The Court states: "What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." *Id.* at 297, 111 S.Ct. 1825. The Court then quotes with approval the following passage of legislative history:

> "The first right [§ 522(f)(1)] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions."

*Id.* at 297–98, 111 S.Ct. 1825 (quoting H.R.Rep. No. 95–595, at 126–27 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 at 6087–6088). This discussion in *Farrey* supports the idea that § 522(f)(1)(A) is limited to judgments obtained on debts that would otherwise have been unsecured on the petition date, not prepetition foreclosure decrees obtained as a result of a default on a pre-existing consensual security interest, such as Armstrong's mortgage.

In the context of a mechanic's lien, the following was stated in *In re Ahokas,* 361 B.R. 54 (Bankr.D.Vt.2007):

> The Code broadly defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(37). It more specifically defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding," § 101(36), and a statutory lien as a "lien arising solely by force of statute on specified circumstances or conditions, . . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." § 101(53). The three categories of liens (statutory liens, judicial liens, and security interests) "are mutually exclusive and are exhaustive except for certain common-law liens." *Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re*

*APC Constr. Inc.),* 112 B.R. 89, 122 (Bankr.D.Vt.1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess., 312 (1997)).

## B. Judgments Arising under Vermont Contractor's Lien Law Are Statutory Liens

It is well-settled that Vermont's contractor's/mechanic's liens are viewed as statutory liens under the Bankruptcy Code. *See Glinka v. Hinesburg Sand & Gravel, Inc. (In re APC Constr., Inc.),* 132 B.R. 690, 693 (D.Vt.1991) ("Vermont statutory and decisional law make it clear that a contractor's lien under 9 V.S.A. § 1921–1928 is a statutory lien as defined by the bankruptcy Code."); *Goodro v. Tarkey,* 112 Vt. 212, 214, 22 A.2d 509, 510 (1941) (holding that "the right to acquire and enforce mechanic's liens is a creature of and dependent upon statute").

A statutory lien, such as a mechanic's lien, retains its statutory character even though the lienor must resort to judicial process to perfect the lien. This was eloquently explained in *APC Constr.,* where the district court stated that "a Vermont statutory mechanic's lien *exists* at the moment the work on the property begins," although it "takes effect" after certain documents are filed in the proper office. *APC Constr.,* 132 B.R. at 694 (emphasis in original). The court continued that, up until and including the point where the lienor filed the documents asserting his or her claim, the lienor did not have to resort to judicial process to obtain the lien. The district court pointed out that if the lien was to remain in effect, the lienor had to attach the property by commencing a lawsuit to enforce the lien within three months from the filing of the documents or from when the last payment was due, pursuant to 9 V. S.A. § 1924. The lienor was then required to obtain a judicial order for a writ of attachment to perfect and preserve the lien. The district court held that this resort to the courts, however, did not transform a statutory lien into a judicial lien, observing " '[t]he result of a judicial process does not affect the statutory being of a contractor's lien. The obtaining of a writ of attachment to perfect a statutory lien, although judicial in nature, is just another statutory step from inchoateness to perfection.' " *Id.* (quoting *APC Constr.,* 112 B.R. 89). Hence, this Court concludes that the portion of the subject lien that arises from the Vermont mechanic's lien statute is a statutory lien and, therefore, is not avoidable under § 522(f).

In *In re Thames,* 349 B.R. 659, 665–66 (Bankr.D.Idaho 2005), the following was stated:

> B. Stronks's Lien Is A Statutory Lien And Is Not Avoidable.
>
> Under the Bankruptcy Code, a debtor may avoid the "fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is ... a judicial lien...." 11 U.S.C. § 522(f)(1)(A). A prerequisite to the application of § 522(f)(1)(A) in this case is that Stronks's lien must be a judicial lien.
>
> The Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A "judicial lien" is a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). In contrast, a "statutory lien" is one that arises "solely by force of a statute on specified circumstances or conditions, ... but does not include ... [a] judicial lien, whether or

not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53).

In *Koski v. Seattle First Nat'l Bank (In re Koski),* 149 B.R. 170, 176–77 (Bankr.D.Idaho 1992), the Court considered and rejected the same argument made by Debtor here, holding that a valid mechanic's lien is a statutory lien not subject to the avoidance provisions of § 522(f), and that a subsequent judicial action to enforce the lien did not transform the lien from a statutory lien to a judicial lien. *See also In re Green,* No. 99–41291, 1999 WL 1811638 at *1–2 (Bankr.D.Idaho Dec. 23, 1999) (holding that a judgment enforcing a mechanic's lien did not transform the underlying lien into a judicial lien, and so the lien was not avoidable under § 522(f)(1)(A)).

In *Koski,* the creditor perfected a mechanic's lien against the debtor's homestead real property by complying with the statutory requirements of Idaho Code § 45–507. The creditor later chose to enforce its lien by filing a judicial action against the debtor to liquidate the amount of the debt and to foreclose on the debtor's real property. The state court granted the creditor a judgment of foreclosure. When the debtor filed for bankruptcy and sought to avoid the creditor's lien, the Court refused. The Court explained that the creditor's lien arose solely by force of statute, and was in existence before the state court entered its judgment of foreclosure. *Koski,* 149 B.R. at 177. The Court held that "[t]he state court decision was in enforcement of the lien; it did not create the lien. As a result, the judicial decision did not change the lien from a

statutory lien to a judicial lien." *Koski,* 149 B.R. at 177.

Based upon its own analysis, and with the support of the foregoing cases, the court determines that the character of a lien as either a "security interest" or a "statutory lien" is not generally altered by the fact that a judicial action to enforce the lien as originally characterized is either initiated or concluded. Under Indiana's statutory framework, a mechanic's lien is exclusively a creature of statute and the underlying basis for the lien arises by means of a statute, thereby constituting a mechanic's lien under Indiana law as a "statutory lien". Judicial action to foreclose the lien in order to enforce it does not alter the characterization of the lien, and the entry of judgment on foreclosure of the mechanic's lien does not convert a statutory mechanic's lien into a judicial lien.

The court determines that any action by Cunningham to seek to affect the lien of Timber Ridge cannot be pursued pursuant to 11 U.S.C. § 522(f) because Timber Ridge's assertion of a mechanic's lien, including the judgment obtained in state court with respect to that lien, does not constitute a "judicial lien" as defined by 11 U.S.C. § 101(36), and is therefore not within the scope of liens which may be avoided pursuant to 11 U.S.C. § 522(f)(1)(A).

IT IS ORDERED, ADJUDGED AND DECREED that the record # 44 Motion to Avoid Judicial Lien filed by Corey Cunningham and Susan Cunningham on October 11, 2011 is denied.[3]

---

**3.** As noted above, this decision only determines the availability of 11 U.S.C. § 522(f) to

